| United States District Court | CRIMINAL COMPLAINT | DISTRICT of ARIZONA |
|---|---|---|
| United States of America<br>v.<br>**DAVID LAMAR ESPINOZA**<br>DOB: 11/xx/1989; United States Citizen<br>**JESSE FITZGERALD WILLIAMS**<br>DOB: 01/xx/1979; United States Citizen<br>**JOSEPH ANGEL LOPEZ**<br>DOB: 07/xx/1989; United States Citizen<br>**SONIA ANN PENNINGTON**<br>DOB: 09/xx/1969; United States Citizen | | DOCKET NO.<br><br>RECEIVED JUL 2 6 2010<br>CLERK U S DISTRICT COURT<br>DISTRICT OF ARIZONA<br>BY_____<br><br>10-06072M<br><br>MAGISTRATE'S CASE NO. |

Complaint for violations of Title 21, United States Code § 846; and Title 18, United States Code § 924(c).

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

See attached charges incorporated by reference herein.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

See attached statement of probable cause incorporated by reference herein.

MATERIAL WITNESSES IN RELATION TO THE CHARGE:

| WARRANT AND DETENTION REQUESTED<br>Being duly sworn, I declare that the foregoing is<br>true and correct to the best of my knowledge.<br>AUSA Angela W. Woolridge<br>*/s/ Angela W. Woolridge* | SIGNATURE OF COMPLAINANT<br>(official title) *[signature]* |
|---|---|
| | OFFICIAL TITLE<br>**ATF Agent** |
| Sworn to before me and subscribed in my presence. | |
| SIGNATURE OF MAGISTRATE JUDGE[1]<br>*[signature] Hector C. Estrada* | DATE<br>July 26, 2010 |

[1] See Federal rules of Criminal Procedure Rules 3 and 5

**DAVID LAMAR ESPINOZA**
DOB: 11/xx/1989; United States Citizen
**JESSE FITZGERALD WILLIAMS**
DOB: 01/xx/1979; United States Citizen
**JOSEPH ANGEL LOPEZ**
DOB: 07/xx/1989; United States Citizen
**SONIA ANN PENNINGTON**
DOB: 09/xx/1969; United States Citizen

**Count One**

From on or about June of 2010 and up to and including July 23, 2010, at or near Tucson, in the District of Arizona, **DAVID LAMAR ESPINOZA, JESSE FITZGERALD WILLIAMS, JOSEPH ANGEL LOPEZ,** and **SONIA ANN PENNINGTON**, named herein as defendants and co-conspirators, did knowingly and intentionally combine, conspire, confederate and agree together and with other persons to possess with intent to distribute five kilograms or more of cocaine, that is, approximately fifteen kilograms of cocaine, a Schedule II controlled substance; in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii).

All in violation of Title 21, United States Code, Section 846.

**Count Two**

On or about July 23, 2010, at or near Tucson, in the District of Arizona, **DAVID LAMAR ESPINOZA, JESSE FITZGERALD WILLIAMS, JOSEPH ANGEL LOPEZ,** and **SONIA ANN PENNINGTON** did possess and carry firearms, specifically; one Springfield Armory, model XD9, 9mm semi-auto pistol, serial number US806451; one Taurus Millennium, model PT145 PRO, .45 caliber semi-auto pistol, serial number NBX21231; and one Iver Johnson & Cycle Works, .38 caliber revolver, serial number 72760; in furtherance of a drug trafficking offense as defined in Title 18, United States Code, Section 924(c)(2) and Title 21, United States Code, Section 802, et. seq., that is, conspiracy to possess with intent to distribute a controlled substance, as alleged in Count One of this complaint, in violation of Title 18, United States Code, Sections 924(c).

**Basis for Complaint**

On June 25, 2010, at or near Tucson, in the District of Arizona, at the Panda Express Restaurant, an undercover agent (hereinafter referred to as "UC") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") met with DAVID LAMAR ESPINOZA. An ATF Confidential Informant ("CI") had received information that ESPINOZA had a robbery crew that would be interested in robbing a drug stash house. During the meeting, the UC advised ESPINOZA that he (UC) is associated with a narcotic trafficking organization operating out of the Tucson, Arizona area. The UC explained to ESPINOZA that he travels from Tennessee

to pick up shipments of cocaine that are trafficked across that Mexican/United States border. The UC further explained that he received a phone call upon the arrival of the narcotics into Tucson. The UC stated that upon receipt of the phone call, he (UC) travels to a designated location to pick up the narcotics. The UC advised ESPINOZA that he normally receives (5) kilograms of cocaine. The UC further advised ESPINOZA that he has seen additional kilograms of cocaine during his previous pickups. The UC warned that there are always armed individuals present at the pickup location. ESPINOZA responded by advising the UC that he (ESPINOZA) has committed robberies in the past.

The UC continued by asking ESPINOZA how many people he (ESPINOZA) had available to commit the robbery. ESPINOZA explained that his (ESPINOZA's) father and another associate would be available to commit the robbery. ESPINOZA advised the UC that he (ESPINOZA) could acquire firearms to commit the robbery.

The UC went on to advise ESPINOZA that they (UC and ESPINOZA) would split the stolen kilograms of cocaine taken during the robbery, to which ESPINOZA agreed.

As the conversation continued, the UC advised ESPINOZA that he would return to Tucson in a couple of weeks. The UC went on to advise ESPINOZA that he would like to meet his (ESPINOZA's) associates, prior to the commission of the robbery.

On July 14, 2010, at the La Quinta Hotel in Tucson, Arizona, the UC met with DAVID LAMAR ESPINOZA, JESSE WILLIAMS and a third male subject. During the meeting, the UC asked ESPINOZA what he told WILLIAMS and the other subject. ESPINOZA stated he told them, but "they want to hear it from you" (the UC). At that point, the UC explained to all three individuals that he knows of a drug supplier who brings kilos of cocaine across the border in an RV. The UC stated he has been working with this drug supplier for a while and has picked up 5 kilos of cocaine from this supplier on three previous occasions. During those occasions, the UC has seen more than just the 5 kilos of cocaine and on the last pick up there were 15 – 20 more kilos of cocaine in the RV.

The UC explained to the subjects that he gets a call from the drug supplier indicating the day the drugs will cross, and an additional call on the day when the RV has crossed the border. The UC stated the drug supplier will then tell the UC where to meet to pick up his 5 kilos of cocaine. The third subject asked the UC further questions on how the meeting at the RV transpires. The third subject further stated if the drugs are coming across the border there are probably additional people protecting the load of cocaine and the need for the robbery crew to identify the "spotters".

The UC then asked WILLIAMS, ESPINOZA, and the third subject if they were interested in conducting the drug robbery. One of the subjects responded: "Yeah...hell yeah." WILLIAMS then stated the need for his robbery crew gain control of the environment to be successful. The subjects asked further questions about how the UC picks up his 5 kilos, questioning if he can send a text message with information about the meeting. The UC then asked if the subjects had their guns, and the subjects responded that it was not going to be a problem.

10-00720M

On July 23, 2010, the UC met with ESPINOZA, WILLIAMS, JOSEPH ANGEL LOPEZ, and SONIA ANN PENNINGTON at an AutoZone in Tucson, Arizona. This was scheduled as a pre-meet before the robbery of the drug stash in the RV. This was the first time the UC met LOPEZ, so the UC approached LOPEZ and asked him if he knew what was going on. LOPEZ acknowledged yes. The UC further stated to LOPEZ that the RV they were going to rob was loaded with 15-20 kilos. LOPEZ acknowledged that he knew this. The UC then asked LOPEZ if they had their guns for the robbery, to which LOPEZ acknowledged yes.

Prior to the meeting at the AutoZone, surveillance units were set up on the residence of ESPINOZA at 7026 S Placita Montesol. Surveillance units witnessed a black male in black clothing place a box in the trunk of the white Cadillac. The white Cadillac was driven by PENNINGTON. Units also observed a grey Cadillac driven by LOPEZ with ESPINOZA and WILLIAMS as passengers. These vehicles were followed from the residence to the AutoZone.

A short time later, the UC spoke to WILLLIAMS about the guns and both WILLIAMS and the UC walked to the white Cadillac that had been driven to the AutoZone by PENNINGTON. WILLIAMS opened the trunk and showed the UC a box containing three firearms. The UC, who had brought a black duffle bag to the trunk, opened the bag and WILLIAMS placed a revolver in the bag. The UC then suggested that WILLIAMS put the whole box with the two remaining semi-automatic pistols in the bag. The firearms were then transported from the white Cadillac to the grey Cadillac driven by LOPEZ and placed in the back seat by the UC.

The UC then introduced himself to PENNINGTON. PENNINGTON told UC to take care of her boys. PENNINGTON then told ESPINOZA, WILLIAMS, and LOPEZ to be safe. ESPINOZA then stated to PENNINGTON he would call her when he was done. The white Cadillac with PENNINGTON inside then left the AutoZone parking lot. The grey Cadillac with ESPINOZA, WILLIAMS, and LOPEZ followed the UC to a parking lot behind a Food City.

A short time later both vehicles (the UC vehicle and the grey Cadillac with ESPINOZA, WILLIAMS, and LOPEZ) arrived behind the Food City shopping complex in Tucson, Arizona. At the Food City parking lot, the UC had an undercover car staged as a vehicle which the robbery "crew" could use to conduct the "hit." The UC then asked the robbery crew if they wanted to transfer the guns to the staged vehicle. One of the members of the robbery crew stated yes and the LOPEZ handed the black duffle bag with the guns to the UC. The UC placed the guns in the staged vehicle. The UC then stated he had received the call from the drug supplier and the hit should go down anytime. A short time later ESPINOZA received a phone call in which the person on the other end of the line presumably told ESPINOZA that the police were there. ESPINOZA told the UC the police are here and stated: "Lets go." At that time, ATF agents affected the arrest of all three suspects and seized three firearms from the black duffle bag.

10-00720M

The three firearms are: one Springfield Armory, model XD9, 9mm semi-auto pistol, serial # US806451, made in Croatia & imported by Springfield Inc., Geneseo, IL (two magazines with 17 rounds of 9mm ammunition); one Taurus Millennium, model PT145 PRO, .45 caliber semi-auto pistol, serial # NBX21231, made in Brazil & imported by Taurus International, Miami, FL (one magazine with 6 rounds of .45 caliber ammunition); and one Iver Johnson & Cycle Works, .38 caliber revolver, serial # 72760 (with 4 rounds of ammunition). All three firearms were loaded with ammunition when they were seized by ATF agents.

ATF agents interviewed LOPEZ. After being advised of his Miranda Rights, LOPEZ stated he understood his rights and subsequently waived in his rights in writing. LOPEZ then advised the following: LOPEZ was aware that ESPINOZA and FNU LNU (described as a black male and known to him as PENNINGTON's boyfriend), were going to conduct a home invasion for "fifteen to twenty bricks". LOPEZ was aware that ESPINOZA had previously conducted home invasions. ESPINOZA asked LOPEZ to assist in the home invasion between one and two weeks ago. LOPEZ agreed to assist ESPINOZA in the home invasion and would receive one third of the profits from the home invasion. LOPEZ changed his mind before he left ESPINOZA's residence and did not want to assist in the home invasion. LOPEZ agreed to drive ESPINOZA and FNU LNU to an AutoZone on Valenica Road in exchange for one hundred dollars ($100). LOPEZ was aware that ESPINOZA and FNU LNU possessed firearms in a black bag. LOPEZ observed FNU LNU retrieve the black bag from PENNINGTON's vehicle at the AutoZone. LOPEZ observed FNU LNU place the black bag in the rear passenger seat of LOPEZ's grey Cadillac at the AutoZone. LOPEZ drove ESPINOZA and FNU LNU to the shopping center at 12th Avenue and Valencia Road, where he dropped them off to the rear of the shopping center. LOPEZ parked the vehicle near Valencia and was walking back to the group when he observed a subject wearing a police vest in a U-Haul truck. LOPEZ called ESPINOZA and advised that there were police officers with vests and guns in the area. LOPEZ heard several loud bangs and ran away. LOPEZ then contacted PENNINGTON to advise that there were several police officers in the area and that ESPINOZA was in trouble.

10-00720M